UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JOHANNE RICHE                                    Docket No.:

                Plaintiff

     -against-                                      **COMPLAINT**

AMERICAN EAGLE OUTFITTERS RETAIL COMPANY
LAUREN CRAYNE, in her individual and official capacity,
NICOLE VULPIS, in her individual and official capacity;
ANNETTE VALLEE, in her individual and official capacity,
JANE DOE, in her individual and official capacity and JOHN
DOE, in his individual and official capacity,

              Defendants.                      **JURY TRIAL DEMANDED**

------------------------------------------------------------------------X

      Plaintiff, JOHANNE RICHE by and through her attorneys WENDY PELLE-BEER &

ASSOCIATES, as and for her Complaint against the Defendants, respectfully states and alleges,

upon information and belief, as follows:

### PRELIMINARY STATEMENT

      1.     This is a civil action, seeking injunctive relief, monetary relief, including past and

ongoing economic loss, compensatory damage, punitive damages, disbursements, cost and fees

both under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 (e) (as amended) and New

York State Executive Law §296 et seq., Article 15.

      2.     Specifically, the Plaintiff alleges that the Defendants, AMERICAN EAGLE

OUTFITTERS RETAIL COMPANY, LAUREN CRAYNE, NICOLE VULPIS, ANNETTE

VALLEE, JANE and JOHN DOE, together with their agents, servants and employees, acting

both individually and in conspiracy with each other, acting beyond the scope of their job duties

or functions, have intentionally, knowingly, purposefully, negligently, carelessly and recklessly sought to and failed to properly supervise.

3.      Defendants and their agents further promulgated discriminatory policies and directed and encouraged its agents to carry out such policies, which Defendants knew to be detrimental to Plaintiff, and did deprive Plaintiff of employment, position, title and pay through a pattern of discrimination, retaliation, misrepresentation, misinformation, harassment, and character assassination, while fostering an environment that allowed for Plaintiff to be harassed and discriminated against.  Through such acts, Defendants further created a hostile workplace, with abuse and manipulation of laws rules and regulations, on the basis of Plaintiff's race, color and gender, voicing of opposition to unlawful racial discrimination in employment.

4.      Said acts against Plaintiff JOANNE RICHE were done knowingly, purposely and with all intentions of depriving her of her right to be free of discrimination within her employment at AMERICAN EAGLE OUTFITTERS RETAIL COMPANY.

5.      Said acts were done knowingly, with the consent and condonation of AMERICAN EAGLE OUTFITTERS RETAIL COMPANY, LAUREN CRAYNE, NICOLE VULPIS, ANNETTE VALLEE, JANE and JOHN DOE, with the intended and expressed purpose of punishing, silencing, isolating, removing and violating the rights of Plaintiff as protected by statutes, rules and regulations.  Said activity was known to the Defendants and was accepted and supported as policy, practice and custom.

6.      Said acts against Plaintiff JOANNE RICHE are on-going and continue to the present.

**JURISDICTIONAL VENUE**

7.      Jurisdiction of this court is invoked under 28 U.S.C. §§1331 and 1343 and 42 U.S.C. § 2000(e).  This Court is requested to exercise pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C § 1367.

8.      Prior to the filing of this action, within 300 days of the acts complained herein, and well within the 300 days of Plaintiff's last day of working in 2017,  Plaintiff properly filed a charge of discrimination against the Defendant AMERICAN EAGLE OUTFITTERS RETAIL COMPANY, with the New York State Division of Human Rights and cross filed with the United States Equal Employment Opportunity Commission (Charge No.: 16G-2017-00056 and 16G—2017-02343).  That complaint alleged discrimination and retaliation based upon race and color.

9.      The United States Equal Employment Opportunity Commission issued a Notice of Right to Sue letter to Plaintiff in this action, in conformity with the applicable rules, dated October 30, 2017, mailed on October 31, 2017 and received by the Plaintiff on or about November 3, 2017 (**Exhibit A**).  This complaint is filed within 90 days of Plaintiff's receipt of that Notice.

10.      Venue herein is proper under 28 U.S.C. § 1391(b); the cause of action arose in the Eastern District of New York and upon information and belief the Defendants maintain corporate offices in New York County and the Plaintiff resides in Kings County.

**PARTIES**

11.      Plaintiff, JOHANNE RICHE, is an African American woman, was at all times relevant herein, a natural person. Plaintiff resides in Kings County, State of New York and at all relevant times were an employee of AMERICAN EAGLE OUTFITTERS RETAIL COMPANY

12. During all times mentioned in this Complaint AMERICAN EAGLE OUTFITTERS RETAIL COMPANY, is a corporation doing business in the State of New York.

13. During all times mentioned in this Complaint, LAUREN CRAYNE, a White female, sued herein in her official and individual capacity, is on information and belief, an employee district manager of the Defendant AMERICAN EAGLE OUTFITTERS RETAIL COMPANY.

14. During all times mentioned in this Complaint, Defendant, NICOLE VULPIS, is a White female, sued herein in her official and individual capacity, is on information and belief, is an employee of the Defendant AMERICAN EAGLE OUTFITTERS RETAIL COMPANY, was Bay Terrace store manager.

15. During all times mentioned in this Complaint, Defendant, ANNETTE VALLEE, is an African American female, sued herein in her official and individual capacity, is on information and belief, is an employee of the Defendant AMERICAN EAGLE OUTFITTERS RETAIL COMPANY, was Plaintiff's store manager, at the Bay Terrace location.

16. During all times mentioned in this Complaint, Defendant, JANE DOE, is an White female, sued herein in her official and individual capacity, is on information and belief, is an employee of the Defendant AMERICAN EAGLE OUTFITTERS RETAIL COMPANY.

17. During all times mentioned in this Complaint, Defendant, JOHN DOE, is a White male, sued herein in his official and individual capacity, is on information and belief, is an employee of the Defendant AMERICAN EAGLE OUTFITTERS RETAIL COMPANY.

18. During all times mentioned in this complaint, the Defendants and each of them, separately and in concert, engaged in acts and omissions which constituted deprivation of the statutory rights, guarantees and immunities of the plaintiff, and while these acts were carried out,

they had no justification or excuse in law, and were instead gratuitous, illegal, improper and unrelated to any activity in which employers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

19.     Each of the Defendants at all times relevant to this action had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of the Plaintiff; but each of the Defendants failed and refused to perform that duty, failed and refused to restrain the other Defendants, and thereby became a party to the injuries inflicted upon the plaintiff, and acted in concert with the others to harm plaintiff.

**FACTUAL ALLEGATIONS**

20.     Plaintiff is an African-American woman, and a former employee of the Defendant AMERICAN EAGLE OUTFITTERS RETAIL COMPANY (hereinafter "AMERICAN EAGLE").

21.     Plaintiff joined AMERICAN EAGLE OUTFITTERS RETAIL COMPANY on October 13, 2013.  She began working for AMERICA EAGLE at the Fulton Street Store, Brooklyn, New York as an assistant store manager.

22.     On or about November 2015, Ms. Riche requested a transfer to a store that was closer to her new home in Queens, New York.

23.     She requested a transfer to Green Acres, Roosevelt Field or Queens Center locations.

24.     At the time of her request, Ms. Riche was told there were no openings in Green Acres or Queens Center locations.

25.     Plaintiff thought that the lack of openings strange as managers are always quitting and there are always openings.

26.     Plaintiff learned that there was a vacant position in the Roosevelt Field location. Ms. Riche discussed the position with the District Manager (DM) at the time, Adrian Tse, about a pay increase if she transferred to that location.

27.     Plaintiff was told that there would not be a pay increase if she transferred to that location.

28.     Upon information and belief, if a store is located further outside the city and was a higher value store in terms of sales revenue a transferee would receive a pay increase to match the pay grades at the new location.

29.     Defendants refused to increase her salary if she took the position to make it commensurate with that location's high-volume earnings.

30.     Ms. Riche did not apply for that position as in addition to the lack of pay increase it required more travel.

31.     On information and belief, salaries and bonuses are correlated to the amount of sales revenue a store generates, on a general basis.

32.     Accordingly, on information and belief, a store's projected sales revenues support the number of employees employed at the store.

33.     At the time that Ms. Riche sought a transfer, other employees at her store, the Fulton Store location, transferred easily.  For example, George Rivera, a store manager, transferred to the Bronx, because it was closer to his home.  His salary was increased because he went to a higher value store.

34.     Plaintiff asked Mr. Tse about transferring to the Green Acres or Queens Center location and was told that there were no openings at those locations even though he did not control/oversee those Queens Stores.

35.     However, Ms. Riche's research revealed that 95% of the store employees at the Queens Center location are Hispanic as is the Store Manager.  Plaintiff felt that she was distinctly being discouraged from considering that location due to that fact.

36.     On or about November 23, 2015, Ms. Riche received a transfer and began to work at the Bay Terrace store location in Queens.

37.     She has never lived in Queens. She was unaware as to how the bus and train systems worked in Queens.

38.     Plaintiff does not drive and her household does not own a vehicle.

39.     Her new apartment was in Southern Queens and she had to commute to Northern Queens, to the northern most point, in Bayside. Once she began to commute to the new location, she learned that there are no trains from Southern Queens to Northern Queens and that she would have to rely solely on the bus system.

40.     Plaintiff learned also that her commute to the Bay Terrace store location required more travel time, on three bus routes, that were not often reliable, with schedules that did not begin until after her start time at work in the mornings, and which stopped running after certain hours at night, especially on week-ends.

41.     In order to be on time Ms. Riche would take cabs to work but could not do so on a daily basis as it was cost prohibitive.

42.     Ms. Riche explained to her manager Nicole Vulpis her commute difficulties. Ms. Vulpis in turn immediately reported it to Lauren Crayne, District Manager.

43.     Plaintiff thought this was a bit unusual and caused her some concern as she had just started working at the location.

44.     Based upon her experience it was within the Store Manager's purview to manage an employee's schedule.  To report out to the District Manager her travel difficulties was tantamount to lodging a complaint against her with a superior, particularly since she had just started at the location.

45.     Ms. Riche's conversations with Ms. Crayne at this time also confirmed that Ms. Vulpis was making regular reports to Defendant Crayne about her.

46.     Ms. Riche became concerned for her employment and began to feel uneasy.

47.     Based on these observations, after joining the Bay Terrace location in late-November 2015, in December 2015, Plaintiff asked to be transferred back to the Fulton Street location because she recognized that her store manager was not being supportive and had begun to treat her differently by reporting her every move to Defendant Crayne.

48.     In addition, the bus routes were unreliable and made her commute far longer than expected especially on nights that she closed and had to return the next morning to open at 8 a.m. and on the week-ends when bus hours are even more limited or simply stopped running.

49.     Store hours at the Bay Terrace store location were 10:00 a.m. to 9:00 p.m. Monday thru Saturday and 10:00 a.m. to 7:00 p.m. on Sundays.

50.     If Plaintiff was the manger on duty to close the store on any day Monday through Saturday at 9:00 p.m., upon finishing, closing out the registers, cleaning and arranging and locking up the store by 11:00 p.m., she would arrive home between 2:00 a.m. and 3 a.m.

51.     Plaintiff's travel time at night and on the week-ends took even longer because bus schedules changed to a week-end schedule of 30 minute to hourly arrivals in the late evening hours or completely stopped running.

52.     If Mr. Riche was scheduled to open the store the following morning, which was often her schedule after closing the night before, she would have to leave her home within 3 or 4 hours after arriving home, to get to work at 8:00 a.m. to open the store which did not open to the public until 10:00 a.m.

53.     Planned trips from Plaintiff's home in South Jamaica to Bay Terrace suggest a 2-hour trip time. In reality, her travel was between 2 to 3 hours depending on traffic, weather, time of day and the time each bus route's began to offer service, or late-night or week-end schedule hours.

54.     Plaintiff requested a transfer to another store.  Her request was denied.

55.     Thereafter, Defendants Vulpis and Crayne immediately began to give Plaintiff verbal warnings and write-up about lateness while providing no such warnings or write-ups to other employees who were also late.

56.     Defendant over-documented Ms. Riche so as to lay the groundwork for termination including constructive termination by forcing Ms. Riche to leave the company.

57.     After receiving her first final written counseling in February 2016, Ms. Riche ate something which caused her to become ill and requested permission to leave before her shift ended.

58.     Plaintiff's store manager did not believe her and reprimanded her verbally for feeling ill. No other employee was ever reprimanded or not permitted to leave work if they became ill.

59.     Defendant Vulpis refusal to grant her permission to leave prior to her shift ending is in stark juxtaposition to other employees who are permitted to leave early for variety of reasons including illness or when they are asked to leave early when work is slow.

60.     On information and belief, as of the summer of 2016 all employees at the Bay Terrace store arrived at work late on a regular basis and were not being disciplined.

61.     The practice at the Bay Terrace store was to ignore all employee lateness with the exception of Ms. Riche.

62.     Upon information and belief, prior to Plaintiff joining the Bay Terrace store location, employees were always late, including the store manager Nicole Vulpis.

63.     Upon information and belief, these employees were not given any verbal warnings, write-ups or placed on final warnings prior to her joining the store.

64.     Ms. Riche was written up for doing exactly what everyone else was doing, prior to and after she joined the Bay Terrace team.

65.     Upon information and belief, Ms. Riche did not receive any verbal, written or final counseling in her record while at the Fulton Street store.

66.     It was the practice of the Defendant to not discipline employees for tardiness or any other occurrence – call off or no call/no show.

67.     Upon information and belief, the policy and practice at the Fulton Street store was also to overlook lateness, particularly as Defendants simply paid employees for the hours they worked, a benefit to the company if salaries were lower.

68.     Upon information and belief, this practice was the same at the Bay Terrace store, again with the exception of Mr. Riche, where other employees were not disciplined for tardiness or any other occurrence.

69.     On information and belief, on occasion employees who came in late would not punch in and the manager would simply write in, at a later time, their scheduled start time.

70.     At the time that Plaintiff was given the initial and first final counseling notice, she was the only employee at the store who had children and was a primary care giver.

71.     Upon information and belief, as an employee with caregiving responsibilities Mr. Riche has a protected right to request a flexible work schedule that permits her to have sufficient time to get home from work and to return to work after at least 8 hours of rest.

72.     Defendants failed to accommodate Ms. Riche in this regard and refused to provide more predictable, stable work schedule for her as it does for similarly situated employees to enhance firm performance.

73.     Defendants refused to accommodate Ms. Riche request to not work an opening and a closing shift back-to-back.

74.     Plaintiff's District Manager did absolutely nothing to help the Store Manager to problem-solve Ms. Riche's specific request.

75.     Rather, Defendants simply made it more difficult for her to come in on time by continuing to schedule numerous back-to-back closings and openings.

76.     Defendants advised other employees to not switch shifts with Ms. Riche although they wanted to switch with her for their own personal reasons.

77.     Defendants wrote up Plaintiff and used the write-ups to prevent her from transferring and obtaining salary raises and bonuses and promotions.

78.     Defendants also made it more difficult for her to transfer in that they wrote her up and placed her on performance improvement plans (PIP) as such write-ups and PIPs eliminated an employee from transferring to another store.

79.     Ms. Riche lodged numerous complains to Human Resources about the treatment she was afforded and Defendants did nothing to address her concerns because she was African

American but instead retaliated against the Plaintiff for having complained about the discriminatory treatment she was afforded.

80.     Upon information and belief, Employees are permitted five (5) incidents and occurrences, tardiness and early departures per rolling six-month period before being verbally warned or written up.

81.     Upon information and belief, an occurrence is one missed shift (call-off); two or more minutes late for start of scheduled shift; leaving before the end of a scheduled shift without immediate manager approval and two or more minutes late return from scheduled rest breaks.

82.     Upon information and belief, Defendants' employee handbook allows for a six month look back from the first occurrence.

83.     Plaintiff was written up by Defendants for lateness's that took place while she was at the Fulton Street store under the direction of another manager.

84.      Plaintiff was working at the Fulton Street store, had not been ever disciplined for lateness.

85.     These occurrences did not fall within the purview of Defendant Vulpis.

86.     Defendant Vulpis who did not know whether or not the occurrences had been excused, wrote up the Plaintiff any way in retaliation for Plaintiff complaining about the treatment she was afforded.

87.     Upon information and belief, the only occurrence that Ms. Vulpis was aware of that occurred at the Bay Terrace store was a purported lateness occurrence on 12/1/2015.

88.     After a week of working at the Bay Terrace store location, Ms. Riche asked Ms. Crayne, the district manager, to be transferred back to the Fulton Street location as she was uncomfortable at the store.

89.     Plaintiff made this request because she observed Ms. Vulpis watching her every move and reporting her actions to Defendant Crayne.

90.     Plaintiff noticed that Defendant Vulpis did not watch or report to Defendant Crayne with regard to any other employee.

91.     Defendant Crayne denied Plaintiff's request.

92.     Upon information and belief Defendants began to lay the ground work to justify termination including constructive termination of Ms. Riche by creating a hostile work environment through intimidation and harassment of the Plaintiff.

93.      Within two weeks of working at the store and voicing her concerns to Defendant Crayne, Plaintiff was written up by Defendant Vulpis.

94.     Upon information and belief, Plaintiff was written up by the Defendants Crayne and Vulpis. The write-ups covered lateness that occurred prior to her transfer to the Bay Terrace store.

95.      Upon information and belief none of the occurrences occurred under Ms. Vulpis' watch nor that of her District Manager and they both were unaware of any extenuating circumstance under which they occurred and/or excused.

96.     Defendants purposely wrote up the Plaintiff so as to prevent her from transferring to any other store location.

97.     Both Defendants Vulpis and Crayne used disciplinary action as a basis to prevent a transfer and to document Ms. Riche to justify termination including constructive termination on account of her race, color and gender.

98.     Upon information and belief, from January 1, 2015 to December 2015, Defendant Vulpis, White female, Store Manager, had been late approximately 61 times.

99.     Upon information and belief, from January 1, 2015 to December 2015, Defendant Vulpis was extra late, (over 15 minutes) 19 times including 0.95 minutes on September 18, 2015 and 1hour and10 minutes on October 2, 2015 and she was not written up.

100.    Upon information and belief, the Defendant American Eagle's employee handbook provides no guidance as to how long an initial warning or any warning should last.

101.    In Defendants' initial warning, Ms. Riche is provided with a warning period of 11/25/2015 to 4/25/2016 - five months, upon information and belief, completely unheard of in the Bay Terrace store or the Fulton street store where Ms. Riche initially started her employ.

102.    On or about February 19, 2016, Ms. Riche was given a final counseling signed by Ms. Vulpis on February 19, 2016.

103.    The final counseling listing eight (8) purported occurrences. This final counseling lasted six months from February 19, 2016 to August 19, 2016.

104.    This write up occurred after Ms. Riche complained again to Ms. Crayne of the unfair treatment to which she was being afforded with regard to lateness.

105.    Again, Defendant Vulpis, White female, Store Manager, while writing up Ms. Riche for purported violation of the Respondents time and attendance policy, was late 19 times from January 1, 2016 to July 31, 2016 and extra late 4 times within that same timeframe.  She was not written up.

106.    In addition, Mike Sitiriche, White male, who became Plaintiff's interim manager after Ms. Vulpis left the company, was late four times from July 2016 to August 2016 and extra late 6 times in the same time period.

107.    He was not verbally counseled nor given a final counseling.

108.    During her first final counseling in 2016, Ms. Riche expended astronomical sums taking cabs to be on time so as to not lose her job as she is the primary care giver in her household and could not afford to lose her job. This is not a financial cost that she could maintain in the long term without any accommodation as to scheduling or a transfer.

109.    Upon information and belief, any verbal counseling provided to Ms. Riche did not identify the problem nor provided the actions needed to correct the problem.

110.    Defendants' write ups given to Plaintiff were purposefully devoid of any reference to the cause for Plaintiff's lateness or reason for any call out or provide any direction or assistance in correcting this perceived violation.  It merely restates, verbatim, the AEO attendance policy as written in the handbook.

111.    Upon information and belief, any initial counseling provided to Ms. Riche did not identify the performance deficiency and definitely did not specify concrete or definitive plans for achievement, how progress will be measured and the time frame for completion.

112.    Upon information and belief, any final counseling provided to Ms. Riche did not delineate the specifics of the problem, provide a time frame, nor a plan of action.

113.    On information and belief, all other white female employees who were written up were provided such guidance.

114.    Upon information and belief, Defendants' articulated qualification for the ASM position is the "ability to work a flexible schedule to meet the needs of the business, including holidays nights and weekends."

115.    Plaintiff Riche meets this qualification and more than anyone else at the store maintained a flexible schedule.

116.    Defendant Vulpis, Store Manager, did not work a flexible schedule.  Upon information and belief, she always scheduled herself to be off every week-end.

117.    Upon information and belief, Defendant Vulpis would schedule herself to open the store every Saturday and leave early at 7:00 p.m. and does not work on Sundays.  This was her fixed schedule.

118.    Upon information and belief, there was one ASM who could not open on Tuesdays, he could only close.  This was his fixed schedule.

119.    Upon information and belief, the new SM, ANNETTE VALLEE worked a set schedule also.  She did not work week-ends. This is her fixed schedule.

120.    There is another ASM, who recently left the company, who never closed on Friday nights.  This was his fixed schedule.

121.    As a result, of these fixed schedules, Ms. Riche often closed Friday, Saturday and Sunday nights. She often closed more nights than any other ASM or store manager and worked most week-ends.

122.    Upon information and belief, no employee at the Bay Terrace store has been disciplined for any infraction of company policy, practice or procedure.

123.    On one occasion, the male Hispanic ASM opened the store two hours after the opening time and he was not verbally warned, written up or placed on a final for this egregious act where the store lost two hours of sales revenue.

124.    Upon information and belief, he was good friends with Defendant Vulpis, the Store Manager and no action was taken against him.

125.    More recently the new store manager, Defendant Annette Vallee, closed the store and failed to secure it by locking it. For this egregious act of security breach whereby she

subjected the store to potential vandalism, theft or unknown individuals secreting them in the store overnight to surprise the first employees who arrive to open the store in the morning, she was not verbally warned, written up or placed on a final.

126.    Upon finding out that employees were arriving to work late, including the store manager, and not being disciplined, Plaintiff Riche called HR several times to complain about the unfair treatment to which she was being subjected by her store manager and her district manager while other employees were not. No action was taken by the Defendants.

127.    Approximately one month later, on or about September 14, 2016, Ms. Riche is given another final counseling notice dated September 14, 2016 by the new Store Manager Annette Vallee continuing the pattern of harassment to which prior store manager subjected Ms. Riche.

128.    With regard to the disciplinary actions to which the Plaintiff was subjected Defendants failed to follow its progressive discipline as outlined in its employee handbook.

129.    Upon information and belief, Defendants counseling guidelines involve a three-step process which includes verbal counseling, initial counseling and final counseling.

130.    However, Defendants reserved the right "in its discretion, [to] elect not to follow this process", leaving employees to guess at their employment rights.

131.    The failure of the Defendant to follow this policy with respect to Ms. Riche was due solely to the fact that she was African American and in retaliation because she was a "complainer" as Defendant Vallee, upon information and belief, has advised employees at the store.

132.    This second final counseling period lasted until February 14, 2017.  During that time, Defendants did not offer Ms. Riche any assistance with regard to her schedule in order to address purported attendance issues.

133.    For example, in October 2016, Ms. Riche spoke with new Store Manager, Annette Vallee and requested that she not close that particular Friday and open Saturday.

134.    Upon information and belief, Defendant Vallee, the Store Manager, spoke with Defendant Lauren Crayne who told her not to switch Ms. Riche's schedule and to let her work her shift although another manger was willing to switch shifts with Ms. Riche.

135.    Tired of complaining to her district manager, regional manager and Human Resources, Ms. Riche filed a complaint the Division regarding the discriminatory treatment on September 22, 2016 based on color, gender, disability and race and retaliation.

136.    Plaintiff Riche sought transfers to stores with vacancies.  There were vacancies at the new Harlem location which came on line in Summer/Fall 2016 and Ms. Riche was not considered nor transferred despite excellent work performance.

137.    During the course of her employment, Plaintiff was never trained in Operations Management despite having expressed her desire to learn that component of the business. Plaintiff received training in Merchandizing, Aerie, and Talent.

138.    Upon information and belief, training in these three areas and Operations are necessary in order to be promoted to store manager.

139.    During the time that Plaintiff was employed with the Defendant she has rotated amongst Merchandizing, Aerie, and Talent and did not receive any training in operations despite her expressed interest and many requests for such training.

140.     The failure to train Plaintiff in the area of operations prevented her from advancing in the company as well as stymied her professional growth.  Plaintiff's performance in all three areas, with the exception of operations, was exemplary.

141.     Upon information and belief, it is company policy to not promote African Americans to store managers.

142.     Upon information and belief, Defendants accomplished this goal, by simply not training employees in this area and thus keeping them ineligible to advance the corporate ladder.

143.     Plaintiff was not trained in operations and has not been promoted to store manager because she is African American.

144.     As a result, of Defendants failure to train and promote Plaintiff, Plaintiff has lost in the area of career advancement due to lack of training.

145.     As a result of Defendants failure to train and promote Plaintiff, she has lost economically in that she was unable to earn a higher salary and benefits either within the company or outside of the company.

146.     On or about February 2, 2017 the Defendants terminated the Plaintiff's employment.

147.     Defendants unlawful acts have caused Plaintiff RICHE emotional distress.

148.     Plaintiff has been forced to utilize family and medical leave time in order to deal with the stress of the workplace and her commuting difficulties.

### AS AND FOR A FIRST COUNT
### Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e

149.     Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 147 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

150.    The Defendants, in particular AMERICAN EAGLE OUTFITTERS RETAIL COMPANY, LAUREN CRAYNE, NICOLE VULPIS, ANNETTE VALLEE, JANE and JOHN DOE discriminated against the Plaintiff in her employment based on Plaintiff's race, color and gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), as amended.

151.    The discriminatory acts and conduct of the aforesaid Defendants, including but not limited to Defendants' repeated failure to provide equal terms of employment, condoning harassment, and subjecting Plaintiff to unequal terms and conditions of employment, as alleged above, were acts committed by the Defendants, as part of a single discriminatory policy and practice, which began in November 23, 2015 and continuing.

152.    Plaintiff made said requests for a transfer repeatedly, and on a continuous basis, until she was wrongfully terminated.  However, without justification, Defendants continually denied Plaintiff said requests for transfer, while the Defendants took no action to prevent or remedy said discriminatory treatment of Plaintiff.

153.    Defendants' repeated denial of Plaintiff's request for a transfer were related rejections, as they each served the same discriminatory policy of providing Plaintiff with less opportunities and less prestige than her non-African American, female colleagues/employees of the Defendants.

154.    Upon information and belief, Plaintiff's similarly situated colleagues received transfers, training, advancement, higher positions, more responsibilities and more money from the Defendants, based on their race and color and gender.

155.    As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income, loss of other employment benefits and has suffered and continues to suffer distress, humiliation, embarrassment, great financial expense and damage to her reputation.

156.    Defendants violated public policy in discriminating against Plaintiff because of her race, color and gender.

157.    The acts of Defendants complained of herein were willful, wanton, malicious and oppressive.  They acted with callous disregard, recklessness and deliberate indifference toward the rights of the Plaintiff and without concern for the damage they would cause.  Defendants' acts were motivated by a desire to not accommodate Plaintiff's needs without regard for Plaintiff's well-being, and were based on a lack of concern and ill will towards Plaintiff.

158.    As a result of Defendants' acts, Plaintiff suffered and is entitled to damages sustained to date and continuing, including compensatory damages, costs, attorneys' fees, additional monetary losses, in the amount of one million ($1,000,000.00) dollars, and punitive damages in an amount to be determined at trial.

## AS AND FOR A SECOND COUNT
### 42 U.S.C. §1981 (as amended)

159.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 158 of this Complaint, with the same force and effect as though herein fully set forth.

160.    The above described discriminatory pattern and practice based on race, color, gender and opposition to discrimination by Defendants AMERICAN EAGLE OUTFITTERS RETAIL COMPANY, LAUREN CRAYNE, NICOLE VULPIS, ANNETTE VALLEE, JANE and JOHN DOE, violate 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991.

161.     As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her character and reputation.

162.     Because of Plaintiff's race, color and gender, Defendants AMERICAN EAGLE OUTFITTERS RETAIL COMPANY, LAUREN CRAYNE, NICOLE VULPIS, ANNETTE VALLEE, JANE and JOHN DOE have subjected Plaintiff to mistreatment, harassment and different treatment than other similarly situated Caucasian workers and male workers, as detailed in the facts outlined in the Factual Allegations section above.

163.     Defendants violated public policy in discriminating against Plaintiff JOANNE RICHE because of her race, color and gender.

164.     As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of $1,000,000.00 as well as punitive damages, costs and attorney's fees.

## AS AND FOR A THIRD COUNT
## NYS EXECUTIVE LAW §296

165.     Plaintiff repeats, reiterates and realleges the allegations set forth in paragraphs 1 through 164 of this Complaint, with the same force and effect as though fully set forth herein.

166.     The above-captioned Defendants, failure to transfer, failure to promote and subsequent termination of Plaintiff RICHE, and their discriminatory treatment of Plaintiff on the basis of her race, color, opposition to discrimination, their intentional creation of unequal terms and conditions, denied the Plaintiff the rights to equal protection of the local, state and federal laws.

167.     By the Defendants acts set forth in the Factual Allegations section above, subjected Plaintiff RICHE to discriminatory treatment, in relation to employment, based on race,

color, and opposition to discrimination.  Said acts violate the New York State Human Rights
Law (Executive Law § 296).

168.    As a direct result of said acts, Plaintiff RICHE has suffered and continues to
suffer loss of employment benefits, loss of career opportunities, and has suffered and continues
to suffer repeated, severe and permanent psychological, emotional and physical trauma and
damage, including distress, humiliation, embarrassment, great financial expense and damage to
her reputation, and the emotional and psychological trauma as alleged in the preceding
paragraphs of the within complaint.

169.    As a result of Defendants unlawful acts, Plaintiff RICHE is entitled to the
maximum monetary damages and penalties available by law, as well as costs, attorneys' fees and
punitive damages, together in excess of one million dollars ($1,000,000).


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

(a)     First Count: in excess of one million dollars ($1,000,000.00) in compensatory damages,
punitive damages and attorney's fees;

(b)     Second Count: in excess of one million dollars ($1,000,000.00) in compensatory
damages, punitive damages and attorney's fees;

(c)     Third Count: in excess of one million dollars ($1,000,000.00) in compensatory damages,
and attorney's fees;

(f)     A Declaratory Judgment that Defendants willfully violated plaintiff's rights secured by
federal and state law as alleged herein;

(g)     Injunctive relief, requiring Defendants to correct all past violations of federal and state law as alleged herein; to appoint plaintiff to the position that Defendants' illegal actions prevented him from securing; to enjoin Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

(h)     Plaintiff's attorney's fees, disbursements and costs; and

(i)     An order granting such other legal and equitable relief as the court deems just and proper.

**A JURY TRIAL IS HEREBY DEMANDED**

Dated: Jamaica, New York
       January 29, 2017

WENDY PELLE-BEER & ASSOCIATES, LLP

/S/

By:     _____
        WENDY PELLE-BEER (WPB0831)
        *Attorneys for Plaintiff*
        61-43 186th Street, Suite 211
        Jamaica, New York 11432
        (718) 313-0770